IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DON MAFFEI, Jr.; SHELLY MAFFEI; RODNEY NEW; JUDITH ANN NEW; MIKE LUSK; CAROL ANN LUSK; JOHN BRICKERHOFF, <br><br>　　　　　　Plaintiffs, <br><br>　　　v. <br><br>ALLSTATE CALIFORNIA INSURANCE COMPANY; ALLSTATE INSURANCE COMPANY; ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY; ALLSTATE LIFE INSURANCE COMPANY; and Does 1 to 100, inclusive, <br><br>　　　　　　Defendants. | 02:05-cv-2197-GEB-PAN <br><br><br><br><br><br>ORDER[*] |

Defendants move for dismissal of Defendant Allstate California Insurance Company ("Allstate California") from this action under Federal Rule of Civil Procedure 21, for dismissal of Plaintiffs' fraud, intentional infliction of emotional distress, and loss of consortium claims under Federal Rule of Civil Procedure 12(b)(6), and for dismissal of Plaintiffs' fraud claim under Federal Rule of Civil

---

[*] This motion was determined suitable for decision without oral argument.  L.R. 78-230(h).

1

Procedure 9.[1] (Defs.' Notice of Mot. and Mot. to Dismiss ("Defs.' Mot.") at 4.)  Plaintiffs oppose the motion.

## BACKGROUND

Seven Plaintiffs have brought this action against Allstate California, Allstate Insurance Company, Allstate Property and Casualty Insurance Company, and Allstate Life Insurance Company ("Defendants"). (Pls.' Compl. ¶¶ 1-9.)  Four of the Plaintiffs, Don Maffei Jr., Rodney New, Mike Lusk, and John Brinckerhoff, allege they were employed by Defendants from at least 1998 until 2005 ("Employee Plaintiffs"). (Id. ¶¶ 10-13, 39.)  The other three Plaintiffs, Shelly Maffei, Judith Ann New, and Carol Ann Lusk, allege they are each married to an Employee Plaintiff ("Spousal Plaintiffs").  (Id. ¶¶ 1-3.)

Employee Plaintiffs allege Defendants initiated "an aggressive campaign to write automobile insurance policies in higher mileage bands" in 2001, and continued the campaign through 2002. (Id. ¶¶ 14, 19.)  During the campaign, Defendants allegedly instructed Employee Plaintiffs to use certain practices to achieve mileage band goals.  (Id. ¶¶ 20-22.)  Employee Plaintiffs allege Defendants informed them that failure to meet mileage band goals could result in termination of their employment.  (Id. ¶ 27.)  Defendants also allegedly assured Employee Plaintiffs "that the placement of a customer into [a higher] mileage band rating [utilizing these practices] was legal and proper as well as necessary to the success of the company."  (Id. ¶ 23.)  Employee Plaintiffs allege Defendants subsequently discovered these practices were illegal and/or improper,

---

[1] Unless otherwise indicated, all references to Rules are to the Federal Rules of Civil Procedure.

2

1  but did not inform them about the illegality or impropriety of these
2  practices.  (Id. ¶ 52.)
3       In 2002, a lawsuit was allegedly filed against Defendants
4  for illegal and/or improper mileage band practices, and the California
5  Department of Insurance conducted or was requested to conduct an
6  investigation into the mileage band practices.  (Id. ¶¶ 28-29.)  In
7  2004, Defendants' corporate security allegedly contacted Employee
8  Plaintiffs about their participation in the mileage band practices.
9  (Id. ¶ 30.)  Employee Plaintiffs allege they informed corporate
10 security that they had moved customers from lower to higher mileage
11 bands using the practices endorsed by Defendants.  (Id. ¶ 33.)  In
12 February 2005, Defendants allegedly told Employee Plaintiffs their
13 employment was terminated "for engaging in improper and/or illegal
14 mileage band classification procedures, specifically that they were
15 being terminated for 'violating company policy regarding mileage
16 bands.'"  (Id. ¶ 39.)
17       On September 7, 2005, Plaintiffs filed a Complaint against
18 Defendants in state court, in which Employee Plaintiffs allege claims
19 for wrongful termination in violation of public policy, fraud, and
20 intentional infliction of emotional distress, and Spousal Plaintiffs
21 allege a claim for loss of consortium.  (Id. ¶¶ 41-64.)  Defendants
22 removed the state action to federal court on the basis of diversity
23 jurisdiction, asserting "Plaintiffs and Defendants, other than those
24 who are sham parties whose citizenship may be disregarded, are
25 citizens of different states and the amount in controversy exceeds
26 $75,000, exclusive of costs and interests."  (Defs.' Notice of Removal
27 ¶ 4.)  Specifically, Defendants contend Plaintiffs are citizens of
28 California, and Defendants Allstate Insurance Company, Allstate

1 Property and Casualty Insurance Company, and Allstate Life Insurance
2 Company are corporations organized and existing under the laws of
3 Illinois, with their principal place of business in Illinois.  (Id.
4 ¶¶ 5-14.)  Defendants assert that even though Defendant Allstate
5 California is a corporation organized and existing under the laws of
6 California, it "is a sham or nominal party whose citizenship should be
7 disregarded for purposes of determining jurisdiction."  (Id. ¶ 15.)

## MOTION TO DISMISS ALLSTATE CALIFORNIA

9 Defendants seek dismissal of Allstate California under the
10 fraudulent joinder doctrine, arguing it "has nothing to do with the
11 allegations in the Complaint."  (Defs.' Mot. at 4-5.)  Plaintiffs
12 counter that the motion should be denied because discovery is needed
13 on the status of Allstate California, including whether "any employees
14 of Allstate are assigned to [Allstate California] . . . [and whether
15 Allstate California] had a role in the mileage band policy and
16 practice."  (Pls.' Opp'n to Defs.' Mot. to Dismiss ("Pls.' Opp'n")
17 at 2.)

18 Joinder of a defendant is fraudulent if the defendant cannot
19 be liable to the plaintiff on any theory alleged in the complaint.
20 Richey v. Upjohn Drug Co., 139 F.3d 1313, 1318 (9th Cir. 1998); McCabe
21 v. General Foods Co., 811 F.2d 1336, 1399 (9th Cir. 1987).  When
22 determining whether a defendant is fraudulently joined, "[t]he court
23 may pierce the pleadings, consider the entire record, and determine
24 the basis of joinder by any means available."  Lewis v. Time Inc., 83
25 F.R.D. 455 (E.D. Cal. 1979) ("it is well settled that upon allegations
26 of fraudulent joinder . . . federal courts may look beyond the
27 pleadings to determine if the joinder . . . is a sham or fraudulent
28 device to prevent removal"); McCabe, 811 F.2d at 1399 (a defendant "is

4

1 entitled to present the facts showing the joinder to be fraudulent"). 2 If the facts reveal that joinder is fraudulent, the defendant may be 3 dismissed from the action under Rule 21, which provides "[p]arties may 4 be dropped or added by order of the court on motion of any party . . . 5 at any stage of the action and on such terms as are just." Gasnik v. 6 State Farm Ins. Co., 825. F. Supp. 245, 248-49 (E.D. Cal. 1992).

7 Defendants submitted the declaration of Jim Jonske, 8 Assistant Vice President of Product Operations for Allstate Insurance 9 Company, in support of their motion.  Jonske declares that "around the 10 year 2002, Allstate began considering a business plan to sell 11 insurance in California under a separate California company.  In 12 anticipation of this possible change, Allstate caused [Allstate 13 California] to be incorporated in January 2003 . . . .  However, 14 Allstate thereafter abandoned that potential business plan, and 15 [Allstate California] was never used for anything."  (Jonske Decl. 16 ¶ 2.)  As a result, Allstate California "has never been licensed to 17 sell insurance in California[,] . . . has never conducted any business 18 of any kind anywhere[,] . . . has never been capitalized[,] . . . has 19 never had any assets[,] . . . [and] has never had any employees, 20 offices, or operations of any kind."  (Id. ¶ 3.)  Jonske declares 21 "[i]n short, [Allstate California] is nothing more than an empty 22 corporate shell created in anticipation of a business plan that was 23 never carried out."  (Id.)

24 In light of these facts, Defendant Allstate California 25 cannot be liable to Plaintiffs on any theory alleged in their 26 Complaint.  Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97 27 (1921) (joinder was fraudulent where the defendant had "no real 28 connection [to] the controversy" because the allegations against the

5

defendant were "without any reasonable basis in fact"). Therefore, Defendants' motion to dismiss Allstate California is granted because Allstate California has been fraudulently joined.

## RULE 12(b)(6) MOTION TO DISMISS

Defendants seek dismissal of Plaintiffs' fraud, intentional infliction of emotional distress, and loss of consortium claims under Rule 12(b)(6). (Defs.' Mot. at 4.) When considering a Rule 12(b)(6) dismissal motion, all material allegations in the complaint must be accepted as true and construed in the light most favorable to the plaintiffs. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). In addition, the plaintiffs are given the benefit of every reasonable inference that can be drawn from the allegations in the complaint. Retail Clerks Int'l Ass'n v. Shermahorn, 373 U.S. 746, 753 n.6 (1963). Accordingly, the motion must be denied "unless it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim which would entitle [them] to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

Dismissal is appropriate under Rule 12(b)(6) if the plaintiffs fail to state a claim upon which relief may be granted by either (1) failing to present a cognizable legal theory, or (2) failing to plead sufficient facts to support a cognizable legal theory. Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir. 1984). "If a [claim] is dismissed for failure to state a [cause of action], leave to amend should be granted unless the court determines that allegation of other facts . . . could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986).

I.  Fraud Claim

Defendants argue Employee Plaintiffs' fraud claim should be dismissed because "[t]he California Supreme Court has held [in Hunter v. Upright, Inc., 6 Cal. 4th 1174 (1994)] . . . that an employee cannot sue in fraud for misrepresentations that lead to the termination of his employment." (Defs.' Mot. at 8.) Employee Plaintiffs argue "Hunter is distinguishable from the case at bar and should therefore be disregarded by this court," and cite to Lazer v. Rykoff-Sexton, Inc., 12 Cal. 4th 631 (1996) in support of their argument. (Pls.' Opp'n at 3-4.)

In Hunter, the plaintiff was falsely told by his supervisor that the corporation had decided to eliminate his position. 6 Cal. 4th at 1179. On the basis of that representation, the plaintiff signed a document setting forth his resignation. Id. At trial, a jury found in favor of the plaintiff on his fraud claim. Id. at 1180. After the Court of Appeal affirmed the jury verdict, the California Supreme Court granted the defendant's petition for review to determine whether the plaintiff could recover "tort damages for fraud and deceit predicated on a misrepresentation made to effect the termination of employment." Id. at 1178.

The Supreme Court reversed the Court of Appeals, stating "wrongful termination of employment ordinarily does not give rise to a cause of action for fraud or deceit, even if some misrepresentation is made in the course of the employee's dismissal." Id. at 1178. The court explained the defendant "simply employed a falsehood to do what it otherwise could have accomplished directly." Id. at 1184. The court reasoned that as a result, the plaintiff could not establish all the elements of fraud because plaintiff "did not rely to his detriment

7

on the misrepresentation." Id. at 1184. The court concluded an employee could maintain an action for fraud "only if the plaintiff can establish all of the elements of fraud with respect to a misrepresentation that is separate from the termination of the employee contract, i.e., when the plaintiff's fraud damages cannot be said to result from the termination itself." Id.

In Lazer, the defendant asked the plaintiff to leave his employment in New York and to work for the defendant in Los Angeles. 12 Cal. 4th at 635. When the plaintiff expressed concern about relocating, the defendant falsely told the plaintiff his job in Los Angeles would be secure and would involve significant pay increases. Id. at 635-36. Shortly after the plaintiff relocated, he was fired. Id. As a result, the plaintiff lost past and future income and employment benefits and was burdened with payments on Southern California real estate he could no longer afford. Id. at 380. The plaintiff subsequently filed a complaint asserting a fraud claim. Id. at 637. The trial court dismissed his claim relying on Hunter. Id. The Court of Appeals reversed the trial court, and the California Supreme Court granted the defendant's petition for review. Id. at 638.

The Supreme Court stated "we expressly left open in Hunter the possibility 'that a misrepresentation not aimed at effecting termination of employment, but instead designed to induce the employee to alter detrimentally his or her position in some other respect, might form a basis for a valid fraud claim even in the context of wrongful termination.'" Id. at 641 (citing Hunter, 6 Cal. 4th at 1185)). The court explained Hunter "did not call into question generally the viability of traditional fraud remedies whenever they

8

are sought by a terminated employee," but established that a plaintiff fails to state a claim for fraud if "the element of detrimental reliance [is] absent." Id. at 641, 643.  In addition, the court stated Hunter precludes recovery for fraud "only where the result of the employer's misrepresentation is indistinguishable from an ordinary constructive wrongful termination." Id. at 643.

      The Supreme Court held the plaintiff had established the elements of fraud, including detrimental reliance. Id. at 643.  The court reasoned that unlike Hunter, the defendant's misrepresentations "were made before the employment relationship was formed, when [defendant] had no coercive power over [plaintiff] and [plaintiff] was free to decline the offered position." Id. at 642.  The court further stated that the misrepresentations were actionable because the plaintiff's damages were distinguishable from those incurred as a result of the termination itself. Id. at 643 (noting that the plaintiff had sought damages for the costs of uprooting his family, the expenses incurred in relocation, and the loss of security and income associated with his former employment).

      Hunter and Lazer reveal employees can maintain a cause of action for fraud against their employer only if they allege all of the elements of such a claim, including detrimental reliance, and if they allege damages distinct from the termination itself.  In this action, Employee Plaintiffs allege Defendants misrepresented the legality and/or impropriety of mileage band practices and then fired them for engaging in illegal and/or improper mileage band practices. (Pls.' Compl. ¶¶ 51-54)  Employee Plaintiffs further allege that as a result of their termination, they have been deprived of compensation and benefits and have suffered emotional distress.  (Id. ¶¶ 55-58.)

9

Employee Plaintiffs' fraud claim is distinguishable from that of the employee in Lazar, and is analogous to that of the employee in Hunter. Unlike the misrepresentation in Lazar, the alleged misrepresentation at issue occurred during the employment relationship, when Defendants had "coercive power" over Employee Plaintiffs and could terminate their employment. 12 Cal. 4th at 642. Thus, like the employer in Hunter, Defendants "simply employed a falsehood to do what [they] otherwise could have accomplished directly," i.e. fire Employee Plaintiffs. 6 Cal. 4th at 1184. Therefore, Employee Plaintiffs "did not rely to [their] detriment on the [alleged] misrepresentation" because Defendants could have fired them for a reason unrelated to the misrepresentation. Id. Furthermore, like the employee in Hunter, Employee Plaintiffs seek damages resulting from the termination itself, i.e. lost wages and benefits. Id. at 1178. Unlike the employee in Lazar, Employee Plaintiffs have not alleged they suffered damages distinct from their wrongful termination claim. 12 Cal. 4th at 643.

Therefore, Employee Plaintiffs have failed to state a claim for fraud because they have not alleged detrimental reliance or damages distinct from the termination itself. Accordingly, Defendants motion to dismiss Employee Plaintiffs' fraud claim is granted. However, Employee Plaintiffs will be granted leave to amend their fraud claim.[2]

////
////

---

[2] Since Employee Plaintiffs' fraud claim has been dismissed under Rule 12(b)(6), the Court need not reach Defendants' arguments that the claim should also be dismissed under Rule 9.

## II. Emotional Distress Claim

Defendants argue Employee Plaintiffs' intentional infliction of emotional distress claim should be dismissed because it "is barred by California's exclusive worker's compensation remedies." (Defs.' Mot. at 9.) A claim for emotional distress is barred under the exclusive remedy provisions of workers compensation "[s]o long as the basic conditions of compensation are otherwise satisfied, and the employer's conduct neither contravenes fundamental public policy nor exceeds the risks inherent in the employment relationship . . . ." Livitsanos v. Superior Court, 2 Cal. 4th 744, 754 (1992).

Employee Plaintiffs argue their intentional infliction of emotional distress claim is not barred by the exclusive workers compensation remedies because "the claims asserted by Plaintiffs are allegations of conduct that contravenes public policy." (Pls.' Opp'n at 4.) Employee Plaintiffs allege in their Complaint that their termination violated public policy because (1) they were terminated "for allegedly engaging in activity which Defendant Allstate ultimately informed Plaintiffs was improper and/or illegal and/or contrary to company policy, but upon which Defendant Allstate made their employment contingent," (Pls.' Compl. ¶ 42), (2) "they were terminated in retaliation for divulging the details of Allstate's mileage band campaign to corporate security employees," (Id. ¶ 45), and (3) "they were terminated as part of an effort by Defendant[s] to resolve allegations and/or charges brought against them by the California Department of Insurance for violations of the California Code of Regulations and the California Insurance Code," (Id. ¶ 46). Since Employee Plaintiffs allege Defendants' conduct contravened

public policy, their intentional infliction of emotional distress claim is not barred by the exclusive workers compensation remedies.[3]

In addition, Defendants argue Employee Plaintiffs' intentional infliction of emotional distress claim should be dismissed because "management and termination of an employee is not outrageous conduct even if . . . improperly motivated." (Defs.' Mot. at 11-12.) Employee Plaintiffs rejoin "the factual allegations that the Defendants induced Plaintiffs into engaging in conduct they were informed was lawful, but which was in fact unlawful . . . is certainly extreme and outrageous [conduct] sufficient to satisfy the pleading requirements." (Pls.' Opp'n at 5.)

To state a claim for intentional infliction of emotional distress, Employee Plaintiffs must allege (1) outrageous conduct by Defendants, (2) Defendants intentionally caused or recklessly disregarded the probability of causing emotional distress, (3) Employee Plaintiffs suffered severe or extreme emotional distress, and (4) Defendants' outrageous conduct was the actual and proximate cause of their emotional distress. Treice v. Blue Cross of Cal., 209 Cal. App. 3d 878, 883 (1989). Conduct is outrageous if it is "so extreme as to exceed all bounds of that usually tolerated in a civilized

---

[3] In their Reply, Defendants argue for the first time that the "public policy exception" to the exclusive workers compensation remedy "is of no avail to [Employee] Plaintiffs" because their emotional distress claim cannot "simply duplicate" their wrongful termination in violation of public policy claim. (Defs.' Reply at 7.) However, their argument lacks merit because Employee Plaintiffs may allege claims for both intentional infliction of emotional distress and wrongful termination in violation of public policy. See Phillips v. Gemini Moving Specialists, 63 Cal. App. 4th 563, 577 ("a plaintiff can recover for infliction of emotional distress if he or she has a tort cause of action for wrongful termination in violation of public policy").

12

society."[4]  Id.  "[I]f reasonable minds could differ about whether the conduct is sufficiently outrageous, the issue should be decided by a jury."  Thompson v. Paul, 2005 WL 3307353, at *4 (D. Ariz. 2005); Trice, 209 Cal. App. 3d at 883 ("the outrageousness of a defendant's conduct normally presents an issue of fact to be determined by the trier of fact").

Employee Plaintiffs allege Defendants knew certain mileage band practices were inappropriate and illegal but advised Employee Plaintiffs these practices were appropriate and legal, told Employee Plaintiffs they would be fired if they did not engage in these practices, and after Employee Plaintiffs engaged in these practices, Defendants terminated them as "scapegoats" in an effort to avoid potential negative repercussions from the California Department of Insurance.[5]  (Pls.' Compl. ¶¶ 60-61.)  Viewing these allegations in the light most favorable to Employee Plaintiffs, it could be reasonably inferred that Defendants knowingly exposed them to criminal or civil liability.  See Retail Clerks, 373 U.S. at 753 n.6 (the plaintiffs must be given the benefit of every reasonable inference that can be drawn from the allegations in the complaint).  Since "reasonable minds

---

[4] Although Defendants argue firing an employee is not outrageous conduct (Defs.' Mot. at 12), termination may or may not be outrageous conduct depending on the surrounding circumstances.  Compare Jaken v. GM Hughes Elec., 46 Cal. App. 4th 55, 80 (1996) (employer did not engage in outrageous conduct when employee was fired because of his age), with Rulon-Miller v. Int'l Business Machines Corp., 162 Cal. App. 3d 241, 255 (1985) (employer engaged in outrageous conduct when plaintiff was fired for dating another employee).

[5] Defendants appear to suggest Employee Plaintiffs have not alleged sufficient facts to satisfy the pleading requirements of Rule 8.  However, this suggestion is unavailing because Rule 8 only requires "a short and plain statement of the claim showing that the pleader is entitled to relief."

1  could differ" about whether this alleged conduct is sufficiently
2  outrageous, Thompson, 2005 WL 3307353 at *4, Defendants' motion to
3  dismiss Employee Plaintiffs' intentional infliction of emotional
4  distress claim is denied.  See Conley, 355 U.S. at 45-46 (court cannot
5  dismiss a claim unless it appears "beyond doubt that the plaintiff[s]
6  can prove no set of facts in support of [their] claim which would
7  entitle [them] to relief").
8  III.  Loss of Consortium Claim
9           Defendants argue Spousal Plaintiffs' loss of consortium
10 claim should be dismissed because it is derivative of Employee
11 Plaintiffs' "untenable" claim for intentional infliction of emotional
12 distress.  (Defs.' Mot. at 12.)  However, since Employee Plaintiffs'
13 claim is tenable, (see supra pages 11-14), Defendants' motion to
14 dismiss on this ground is denied.
15          Defendants also argue the loss of consortium claim should be
16 dismissed because Spousal Plaintiffs have not alleged their husbands
17 suffered an injury "sufficiently disabling to raise the inference that
18 their conjugal relationship has been more than superficially or
19 temporarily impaired."  (Defs.' Mot. at 13.)  Spousal Plaintiffs
20 assert that whether the degree of harm suffered by their husbands is
21 sufficiently severe is a question for the jury.  (Pls.' Opp'n at 5.)
22          A loss of consortium claim involves a "loss of
23 companionship, emotional support, love, felicity, and sexual relations
24 'caused by a negligent or intentional injury to the other spouse by a
25 third party.'"  Anderson v. Northrop Corp., 203 Cal. App. 3d 772, 780
26 (1988) (citing Rodriguez v. Bethleham Steel Corp., 12 Cal. 3d 382, 408
27 (1974)).  To state a claim for loss of consortium, Spousal Plaintiffs
28 must allege their husbands suffered an injury that is "sufficiently

14

serious and disabling to raise the inference that the conjugal relationship is more than superficially or temporarily impaired." Molien v. Kaiser Foundation Hosp., 27 Cal. 3d 916, 932-33 (1980); Anderson, 203 Cal. App. 3d at 780 (to state a cause of action for loss of consortium, the plaintiff must plead facts sufficient to establish a significant impairment of the marital relationship). The injury may be physical or psychological, but psychological injury must rise to the "level of a 'neurosis, psychosis, chronic depression, or phobia' [to be] sufficient to substantially disturb . . . [the] marital relationship on more than a temporary basis." Anderson, 203 Cal. App. 3d at 780 (quoting Molien, 27 Cal. 3d at 933); see Park v. Standard Chem Way Co., 60 Cal. App. 3d 47, 50 (1976) (loss of consortium "is not to be confused with the inevitable physical, mental and emotional damage normally or usually suffered by one spouse when the other has been wrongfully injured").

Spousal Plaintiffs allege they "have been deprived of the service, companionship, and consortium" of their husbands because their husbands "suffered embarrassment, anxiety, humiliation, and emotional distress" as a result of Defendants' conduct. (Pls.' Compl. ¶¶ 64, 67.) These allegations of psychological injury are not sufficiently serious or disabling as to raise the inference that the conjugal relationship was more than superficially or temporarily impaired. See Anderson, 203 Cal. App. 3d at 780 (allegations that husband became "mentally upset, distressed, and aggravated as a result of his termination" were not "sufficient to substantially disturb the marital relationship on more than a temporary basis"). Therefore, Defendants' motion to dismiss Spousal Plaintiffs' loss of consortium

1  claim is granted.  However, Spousal Plaintiffs will be granted leave
2  to amend their loss of consortium claim.

### CONCLUSION

For the reasons discussed above, Defendant Allstate California Insurance Company is dismissed from this action, and the claims for fraud and loss of consortium are dismissed without prejudice.  If Plaintiffs can cure the deficiencies in these dismissed claims, they may file and serve an amended complaint within twenty (20) days from the date this Order is filed.  Failure to amend within the time prescribed will automatically convert the dismissal into a dismissal with prejudice.

IT IS SO ORDERED.

Dated:  January 25, 2006

/s/ Garland E. Burrell, Jr.
GARLAND E. BURRELL, JR.
United States District Judge