IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DON MAFFEI, JR.; SHELLY MAFFEI; RODNEY NEW; JUDITH ANN NEW; MIKE LUSK; CAROL ANN LUSK; JOHN BRICKERHOFF,<br><br>           Plaintiffs,<br><br>      v.<br><br>ALLSTATE INSURANCE COMPANY; ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY; ALLSTATE LIFE INSURANCE COMPANY,<br><br>           Defendants.[1] | 02:05-cv-2197-GEB-PAN(JFM)<br><br><br><br><br>ORDER[*] |

Defendants move for dismissal of Plaintiffs' fraud claim under Federal Rule of Civil Procedure 12(b)(6).[2]  (Defs.' Mot. to Dismiss Pls.' First Am. Compl. ("Defs.' Mot.") at 4.)  Plaintiffs oppose the motion.

---

[*]  This motion was determined suitable for decision without oral argument.  L.R. 78-230(h).

[1]  The caption has been amended to reflect the dismissal of Defendant Allstate California Insurance Company (Order, Jan. 26, 2006, at 4-6), and the dismissal of the Doe Defendants (Status Order, Feb. 24, 2006, at 1-2.)

[2]  All references to "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

1

FACTUAL ALLEGATIONS IN COMPLAINT

Don Maffei Jr., Rodney New, Mike Lusk, and John Brinckerhoff ("Plaintiffs") worked for Allstate Insurance Company, Allstate Property and Casualty Insurance Company, and Allstate Life Insurance Company ("Defendants") from approximately 1998 through 2005. (Pl.'s First Am. Compl. ¶¶ 9-12, 38.)  In 2001 and 2002, Defendants instructed Plaintiffs to utilize certain practices to move insurance policy holders from lower to higher mileage bands. (Id. ¶¶ 13, 18-21.)  Defendants also assured Plaintiffs "that the placement of a customer into [a higher] mileage band rating [utilizing these practices] was legal and proper as well as necessary to the success of the company." (Id. ¶ 22.)  Defendants subsequently learned these practices were illegal and/or improper, but did not inform Plaintiffs about the illegality and/or impropriety of these practices. (Id. ¶¶ 51-52.)

A lawsuit was filed against Defendants concerning their illegal and/or improper mileage band practices, and the California Department of Insurance investigated or was requested to investigate Defendants. (Id. ¶¶ 28-29.)  Defendants conducted their own investigation into the mileage band practices, during which corporate security interviewed Plaintiffs about whether they had moved policy holders from lower to higher milage bands. (Id. ¶¶ 31-34.) Plaintiffs told corporate security they had moved policy holders into higher mileage bands utilizing the practices endorsed by Defendants. (Id. ¶ 33.)  Plaintiffs suffered "great emotional and mental distress" as a result of their participation in the interviews because "their personal integrity was attacked." (Id. ¶ 51.)

In February 2005, Defendants told Plaintiffs their employment was terminated "for engaging in improper and/or illegal mileage band classification practices, specifically that they were being terminated for 'violating company policy regarding mileage bands.'" (Id. ¶ 38.) Plaintiffs lost wages, benefits, and other types of employment compensation, and suffered emotional and mental injury as a result of their terminations. (Id. ¶¶ 54, 56-57.)

## PROCEDURAL BACKGROUND

In September 2005, Plaintiffs filed this lawsuit against Defendants asserting claims for wrongful termination in violation of public policy, intentional infliction of emotional distress, and fraud. (See Order, Jan. 26, 2006, at 3.) Defendants moved to dismiss the fraud claim, arguing Hunter v. Upright, Inc., 6 Cal. 4th 1174 (1994) precludes an employee from asserting a fraud claim for misrepresentations that lead to the termination of employment. (See id. at 7.) Plaintiffs countered that their fraud claim was distinguishable from Hunter and analogous to Lazar v. Rykoff-Sexton, Inc., 12 Cal. 4th 631 (1996). (See id.) An Order filed January 26, 2006, ("January 26 Order") considered both cases in light of the allegations in Plaintiffs' Complaint:

> Hunter and Laz[a]r reveal employees can maintain a cause of action for fraud against their employer only if they allege all of the elements of such a claim, including detrimental reliance, and if they allege damages distinct from the termination itself. In this action, [] Plaintiffs allege Defendants misrepresented the legality and/or propriety of mileage band practices and then fired them for engaging in illegal and/or improper mileage band practices. [] Plaintiffs further allege that as a result of their termination, they have been deprived of compensation and benefits and have suffered emotional distress.
>
> [] Plaintiffs' fraud claim is distinguishable from that of the employee in Lazar, and is analogous to

3

> that of the employee in Hunter. Unlike the misrepresentation in Lazar, the alleged misrepresentation at issue occurred during the employment relationship, when Defendants had "coercive power" over [] Plaintiffs and could terminate their employment. Thus, like the employer in Hunter, Defendants "simply employed a falsehood to do what [they] otherwise could have accomplished directly," i.e. fire [] Plaintiffs. Therefore, [] Plaintiffs "did not rely to [their] detriment on the [alleged] misrepresentation" because Defendants could have fired them for a reason unrelated to the misrepresentation. Furthermore, like the employee in Hunter, [] Plaintiffs seek damages resulting from the termination itself, i.e. lost wages and benefits. Unlike the employee in Lazar, [] Plaintiffs have not alleged they suffered damages distinct from their wrongful termination claim.

(Id. at 9-10 (citations omitted).) The January 26 Order concluded Plaintiffs had failed to state a claim for fraud because they had not alleged detrimental reliance or damages distinct from the termination itself. (Id.) Consequently, the fraud claim was dismissed, but Plaintiffs were granted leave to file an amended complaint within twenty days. (Id. at 16.) Plaintiffs timely filed an Amended Complaint, and Defendants again moved to dismiss the fraud claim.

## DISCUSSION

Dismissal is appropriate under Rule 12(b)(6) if Plaintiffs failed (1) to present a cognizable legal theory, or (2) to plead sufficient facts to support a cognizable legal theory. Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir. 1984). When considering a Rule 12(b)(6) dismissal motion, all material allegations in the complaint must be accepted as true and construed in the light most favorable to Plaintiffs. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). In addition, Plaintiffs are given the benefit of every reasonable inference that can be drawn from the

4

allegations in their complaint. Retail Clerks Int'l Ass'n v. Shermahorn, 373 U.S. 746, 753 n.6 (1963). Accordingly, a motion to dismiss must be denied "unless it appears beyond doubt that [Plaintiffs] can prove no set of facts in support of [their] claim which would entitle [them] to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

Defendants argue "Plaintiffs have added only one new allegation [to the fraud claim in their Amended Complaint]- that in addition to lost wages and benefits flowing from their terminations, they sustained 'great emotional and mental anguish' as a result of being required to submit to corporate security interviews." (Defs.' Mot. at 6.) Defendants contend the exclusivity provisions of the Workers' Compensation Act ("WCA") bar Plaintiffs from recovering "emotional distress damages sustained as a result of the corporate security interviews." (Id.)

The California Supreme Court has set forth a two-part test to "determine whether a [claim] is barred by the exclusivity provisions of the WCA." People ex rel. Monterey Mushrooms, Inc. v. Thompson, 136 Cal. App. 4th 24, 29 (2006) (citing Vacanti v. State Comp. Ins. Fund, 24 Cal. 4th 800 (2001)). "A court is . . . first to determine whether the alleged injury falls within the scope of the exclusive remedy provisions." Thompson, 136 Cal. App. 4th at 29. An alleged injury falls within the scope of the exclusive remedy provisions if it "aris[es] out of and in the course of employment." Shoemaker v. Meyers, 52 Cal. 3d 1, 15 (1990). "Secondly, the court [is to] determine whether the alleged acts or motives . . . fall outside the risks encompassed within the compensation bargain." Thompson, 136 Cal. App. 4th at 29. Alleged acts are within the

compensation bargain if they "are a normal part of the employment relationship," and alleged motives are within the compensation bargain if they do not "violate a fundamental policy of the state." Id. If the alleged injury falls within the scope of the exclusive remedy provisions and the alleged acts and motives are within the compensation bargain, "then the [claim] is barred by the exclusivity provisions of the WCA." Id.

Plaintiffs' fraud claim alleges Defendants misrepresented the legality and/or propriety of the mileage band practices, thereby forcing Plaintiffs to participate in corporate security interviews and causing them to suffer emotional and mental distress.[3] (Pls.' Am. Compl. ¶¶ 51, 56.) Applying the first part of the California Supreme Court test to these allegations reveals Plaintiffs' alleged emotional injury arose out of and in the course of their employment. See Shoemaker, 52 Cal. 3d at 18 (stating "when an employee is investigated . . . by the employer . . . the resulting physiological stress and injury arises out of and in the course of employment"). As to the second part of the test, Defendants' alleged acts were a normal part of the employment relationship. See Vacanti, 24 Cal. 4th at 821 (stating "typical employer actions, such as . . . employee interrogation, are . . . a normal part of the employment relationship"); Lamke v. Sunstate Equip. Co., 387 F. Supp. 2d 1044,

---

[3] In their Opposition, Plaintiffs state they "have alleged emotional distress damages, including damage to their personal and professional integrity," and "damage to their reputation." (Pl.'s Opp'n at 3-4.) However, Plaintiffs only alleged that they "were forced to participate in an investigation wherein their personal and professional integrity was attacked causing them great emotional and mental distress," and that they "were caused great emotional and mental anguish when they were forced to participate in an investigation where their personal and professional integrity was called into question." (Pls.' Am. Compl. ¶¶ 51, 56.)

6

1051 (N.D. Cal. 2004) (stating "the employer's dealing with alleged employee misconduct" is "closely connected to normal employer activity").  In addition, Defendants' alleged motive does not violate a fundamental public policy of the state.  <u>Vacanti</u>, 24 Cal. 4th at 824 (holding "fraud requires only an 'intent to induce' another 'to alter his position to his injury or risk' and not an intent that violates a public policy rooted in a constitutional, statutory, or regulatory provision").  Therefore, the WCA bars Plaintiffs from recovering any emotional distress damages sustained as a result of the corporate security interviews.

The remaining fraud allegations in Plaintiffs' Amended Complaint assert Defendants misrepresented the legality and/or propriety of the mileage band practices and then fired Plaintiffs for engaging in illegal and/or improper mileage band practices, thereby depriving Plaintiffs of wages, benefits, and other types of employment compensation, and causing them emotional and mental distress.  (Pls.' Am. Compl. ¶¶ 50-58.)  Defendants correctly note these fraud allegations are exactly the same as those dismissed by the January 26 Order for failure to state a claim.  (<u>See</u> Order, Jan. 26, 2006, at 10.)

Consequently, Plaintiffs' Amended Complaint does not cure the deficiencies in their fraud claim.  Therefore, Plaintiffs' fraud claim is dismissed without prejudice.  If Plaintiffs can cure the deficiencies in their fraud claim, Plaintiffs may file and serve a second amended complaint within ten (10) days from the date this

///

///

7

1  Order is filed.  Failure to amend within the time prescribed will
2  automatically convert the dismissal into a dismissal with prejudice.
3          IT IS SO ORDERED.
4  Dated:  May 18, 2006

                                /s/ Garland E. Burrell, Jr.
                                GARLAND E. BURRELL, JR.
                                United States District Judge