```
                    IN THE UNITED STATES DISTRICT COURT

                   FOR THE EASTERN DISTRICT OF CALIFORNIA
```

| | |
|---|---|
| DON MAFFEI, Jr.; SHELLY MAFFEI;<br>RODNEY NEW; JUDITH ANN NEW;<br>MIKE LUSK; CAROL ANN LUSK;<br>JOHN BRICKERHOFF,<br><br>               Plaintiffs,<br><br>    v.<br><br>ALLSTATE INSURANCE COMPANY;<br>ALLSTATE PROPERTY AND CASUALTY<br>INSURANCE COMPANY; ALLSTATE LIFE<br>INSURANCE COMPANY,<br><br>               Defendants. | 02:05-cv-2197-GEB-EFB<br><br><br><br><br><br><br>ORDER[*] |

Defendants move to dismiss the fraud claim of Plaintiffs Don Maffei, Rodney New, Mike Lusk, and John Brickerhoff ("Plaintiffs") under Rule 12(b)(6) and Rule 9(b) of the Federal Rules of Civil Procedure.[2] Plaintiffs oppose the motion.

## FACTUAL ALLEGATIONS IN THE COMPLAINT

Plaintiffs worked for Defendants Allstate Insurance Company, Allstate Property and Casualty Insurance Company, and Allstate Life

---

[*] This motion was determined suitable for decision without oral argument. L.R. 78-230(h).

[2] All subsequent references to "Rules" are to the Federal Rules of Civil Procedure.

1

1  Insurance Company ("Defendants") from approximately 1998 through 2005.
2  (Pls.' Second Am. Compl. ¶¶ 9-12, 38.)  In 2001 and 2002, Defendants
3  instructed Plaintiffs to utilize certain practices to move insurance
4  policy holders from lower to higher mileage bands. (Id. ¶¶ 13, 18.)
5  Defendants assured Plaintiffs "that the placement of a customer into
6  [a higher] mileage band rating [utilizing these practices] was legal
7  and proper as well as necessary to the success of the company." (Id.
8  ¶ 22.)  Defendants subsequently learned these practices were illegal
9  and/or improper, but did not so inform Plaintiffs. (Id. ¶¶ 51-52.)
10           In 2002, a lawsuit was filed against Defendants regarding
11 their mileage band practices, and the California Department of
12 Insurance subsequently investigated or was requested to investigate
13 Defendants.  (Id. ¶¶ 28-29.)  Defendants conducted their own
14 investigation into the mileage band practices in 2004, during which
15 corporate security interviewed Plaintiffs about whether they had moved
16 policy holders from lower to higher milage bands.  (Id. ¶¶ 31-34.)
17 Plaintiffs told corporate security they had moved policy holders
18 utilizing the practices endorsed by Defendants.  (Id. ¶ 33.)  In 2005,
19 Defendants informed Plaintiffs their employment was terminated "for
20 engaging in improper and/or illegal mileage band classification
21 practices, specifically that they were being terminated for 'violating
22 company policy regarding mileage bands.'"  (Id. ¶ 38.)

PROCEDURAL BACKGROUND

24           In September 2005, Plaintiffs filed a Complaint against
25 Defendants asserting claims for wrongful termination in violation of
26 public policy, intentional infliction of emotional distress, and
27 fraud.  (See Order, Jan. 26, 2006, at 3.)  The fraud claim alleged
28 Defendants misrepresented the legality and/or propriety of the mileage

band practices, then fired Plaintiffs for engaging in these practices, thereby causing them to lose employment compensation and benefits and suffer emotional distress. (See id. at 9.) Defendants subsequently moved to dismiss the fraud claim. (See id. at 1.) An Order filed January 26, 2006, ("January 26 Order") found Plaintiffs had not alleged a cognizable theory of detrimental reliance or damages distinct from their terminations. (Id. at 10.) The January 26 Order dismissed the fraud claim, but granted Plaintiffs leave to file an amended complaint within twenty days. (Id. at 16.)

In February 2006, Plaintiffs timely filed a First Amended Complaint, in which they asserted the same fraud allegations, but also alleged they suffered emotional and mental distress from participating in the corporate security interviews. (See Order, May 19, 2006, at 6.) Defendants again moved to dismiss the fraud claim. (See id.) An Order filed May 19, 2006, ("May 19 Order") found the Workers Compensation Act "bar[red] Plaintiffs from recovering any emotional distress damages," and observed the "remaining fraud allegations" were "exactly the same as those dismissed by the January 26 Order for failure to state a claim." (Id. at 7.) The May 19 Order dismissed the fraud claim, but granted Plaintiffs leave to file a second amended complaint within ten days.[1] (Id.) Plaintiffs timely filed a Second Amended Complaint; Defendants now move to dismiss the fraud claim in that pleading.

---

[1] The May 19 Order is amended nuc pro tunc to dismiss all fraud allegations for emotional distress damages with prejudice since such damages are barred by the Workers Compensation Act. See Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986) (dismissal with prejudice is appropriate if the "allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency").

3

DISCUSSION

I. Rule 12(b)(6): Failure to State a Claim

When considering a Rule 12(b)(6) dismissal motion, all material allegations in the complaint must be accepted as true and construed in the light most favorable to the plaintiffs. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). In addition, the plaintiffs are given the benefit of every reasonable inference that can be drawn from the allegations in their complaint. Retail Clerks Int'l Ass'n v. Shermahorn, 373 U.S. 746, 753 n.6 (1963).

"A complaint may be dismissed as a matter of law for two reasons: (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal theory." Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir. 1984). "If a complaint is dismissed for failure to state a claim, leave to amend should be granted unless the court determines that allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber, 806 F.2d at 1401.

Defendants argue "Plaintiffs have merely added allegations [in their Second Amended Complaint] that they suffered reputational damage," and "[t]his allegation of reputational harm does not remedy the inherent problem with [their] fraud cause of action because they still can show no detrimental reliance, and their damages still flow from their terminations." (Defs.' Mot. at 5.) "[E]mployees can maintain a cause of action for fraud against their employer only if they allege . . . detrimental reliance, and . . . damages distinct from the termination itself." Zuniga v. Chugach Maintenance Services, 2006 WL 769317, *10 (E.D. Cal. 2006); Hunter v. Upright, Inc., 6 Cal.

4th 1174, 1178, 1184 (1994) (finding a fraud claim "without substance" because the plaintiff did not "rely to his detriment on the misrepresentation" and his fraud damages "result[ed] from [the] termination itself"); <u>Lazar v. Rykoff-Sexton, Inc.</u>, 12 Cal. 4th 631, 643 (1996) (stating a "fraud claim cannot be pled [if] the element of detrimental reliance [is] absent"); <u>Lamke v. Sunstate Equipment Co.</u>, 387 F. Supp. 2d 1044, 1050 (finding the plaintiff failed to state a fraud claim because he did "not seek reliance damages unrelated to his ultimate termination").

Defendants argue Plaintiffs could not have detrimentally relied on the alleged misrepresentation "because the . . . fraud occurred during the employment relationship," and "led to . . . [their] terminations." (Defs.' Mot. at 6.) Plaintiffs rejoin that they detrimentally relied on Defendants' assurances of the legality and/or propriety of the mileage band practices because "it was upon these assurances that Plaintiffs engaged in activity which led to the accusations [of misconduct] against them." (Pls.' Opp'n at 3.) Defendants further contend "[t]he reputational damages alleged by the Plaintiffs . . . flow from their terminations" and "remain indistinguishable from their alleged termination damages." (Defs.' Mot. at 6-7.) Plaintiffs respond that "[t]he damage to [their] integrity and reputation for participating in the [mileage band practices] is distinct from [their] termination damages" because "[e]ven if [they] had not been terminated, their reputations and integrity would have suffered for their association with the [practices] and for the allegations made during the investigation." (Pls.' Opp'n at 4.)

1           In their Second Amended Complaint, Plaintiffs allege
2  Defendants misrepresented the legality and/or propriety of the mileage
3  band practices, then terminated their employment for engaging in these
4  practices, thereby causing them to lose employment compensation and
5  benefits.  (Pls.' Second Am. Compl. ¶¶ 51-57.)  As discussed in the
6  January 26 Order, these allegations do not establish a cognizable
7  theory of detrimental reliance because Defendants could have fired
8  Plaintiffs for a reason unrelated to their participation in the
9  mileage band practices, i.e. "Defendants 'simply employed a falsehood
10 to do what [they] otherwise could have accomplished directly' . . . ."
11 (January 26 Order at 10 (quoting Hunter, 6 Cal. 4th at 1184).)  In
12 addition, since Plaintiffs sustained a loss of wages and benefits as a
13 result of their terminations, these damages are not "distinct from the
14 termination itself."  (Id. (citing Lazar, 12 Cal. 4th at 643).)
15 Consequently, these allegations in the Second Amended Complaint fail
16 to state a claim for fraud.

17          However, Plaintiffs also allege that after Defendants
18 learned the mileage band practices were illegal and/or improper,
19 Defendants "placed the blame for said conduct on Plaintiffs," thereby
20 causing them to suffer damage to their reputations and integrity.
21 (Pls.' Second Am. Compl. ¶¶ 52-57.)  These allegations in the Second
22 Amended Complaint plead a cognizable theory of detrimental reliance
23 because Plaintiffs allege they would not have participated in the
24 mileage band practices had Defendants not assured them the practices
25 were legal and/or proper, and their participation in these practices
26 allegedly led to the accusations of misconduct against them.  (See id.
27 ¶¶ 51-52, 54.)  Furthermore, since Plaintiffs assert they incurred
28 damage to their reputations and integrity because they participated in

the mileage band practices and were accused of misconduct, Plaintiffs would have sustained these damages irregardless of their terminations. (See id. ¶¶ 52, 57.)  Therefore, these allegations in the Second Amended Complaint seek damages distinct from the termination itself.

Finally, Defendants argue "reputational damages are not available in a fraud cause of action" because "damage resulting from reliance on [a] misrepresentation must be pecuniary or property loss." (Defs.' Mot. at 7.)  In support of their contention, Defendants cite to a California treatise and assert their research revealed no "California case in which a fraud claim was sufficiently plead when the sole compensable damage was reputational injury." (Id.)  In response, Plaintiffs argue reputational damages are recoverable in a fraud cause of action under California Civil Code § 1709, which states "[o]ne who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers."

The secondary authority Defendants cite in support of their argument states that a fraud claim "typically" or "ordinarily" seeks to recover pecuniary or property loss, but also explains that these types of damages are not a necessary component of a fraud claim. 5 Witkin, Summary of California Law, Torts, §§ 816-817 (2005); see also O'Hara v. Western Seven Trees Corp., 75 Cal. App. 3d 798, 805 (1977) (stating a "deceit action . . . commonly seeks to recover pecuniary loss," but that "there is no essential reason to prevent a deceit action from being maintained . . . where other types of interests are invaded").  Furthermore, although Defendants uncovered no California cases that expressly allowed recovery of reputational damages in a fraud action, Defendants cite no authority expressly

prohibiting the recovery of such damages either.  (See Defs.' Mot. at 7.)  In fact, independent research reveals that several courts have allowed plaintiffs in fraud actions to recover damages for various types of non-pecuniary loss, thereby indicating reputational damages would be similarly recoverable.  See e.g. Work v. Cambell, 164 Cal. 343 (1912) (allowing a plaintiff in a fraud action to recover damages for her husband deserting her); O'Hara, 75 Cal. App. at 805 (allowing a plaintiff in a fraud action to recover for physical harm from an assault); cf. Von Grabe v. Sprint PCS, 312 F. Supp. 2d 1285, 1311 (S.D. Cal. 2003) (refusing to strike fraud allegations seeking pain and suffering damages since such damages "are recoverable . . . in [a] tort action for deceit").  In light of the California statute that allows a plaintiff to recover "any damage" resulting from a fraudulent misrepresentation, Plaintiffs need not allege pecuniary or property loss to state a claim for fraud and may recover damages solely for reputational injury.  See Cal. Civ. Code § 1709 (emphasis added); O'Hara, 75 Cal. App. at 805 (noting Cal. Civ. Code § 1709 "does not limit recovery to pecuniary loss").

Therefore, Defendants' Rule 12(b)(6) motion to dismiss Plaintiffs' fraud allegations for damage to their reputation and integrity is denied, but their motion to dismiss the fraud allegations for lost compensation and benefits damages is granted.  Further, since Plaintiffs have repeatedly failed to cure the identified deficiencies in their fraud allegations, it has become apparent Plaintiffs cannot allege "other facts consistent with the challenged pleading [that] could . . . possibly cure the deficiency."  Schreiber, 806 F.2d at 1401.  Accordingly, the portion of Plaintiffs' fraud claim seeking damages for lost compensation and benefits is dismissed with

1  prejudice.  See id.; Foreman v. Davis,371 U.S. 178, 182 (1962)
2  (indicating dismissal without leave to amend is proper when a
3  plaintiff "repeated[ly] fail[s] to cure deficiencies by amendments
4  previously allowed").

5  II.  Rule 9(b): Particularity Requirement

6         When pleading a fraud claim, "a plaintiff must satisfy the
7  demands of Rule 9(b) . . . , which states that 'in all averments of
8  fraud or mistake, the circumstances constituting the fraud or mistake
9  shall be stated with particularity.'"  Von Grabe, 312 F. Supp. 2d
10 at 1305.  "Courts have explained this rule to require that claims of
11 fraud include the 'who, what, when, where, and how' of the alleged
12 misconduct."  Id. (citing Cooper v. Pickett, 137 F.3d 616, 627 (9th
13 Cir. 1997)).  Consequently, fraud "claims must be 'specific enough to
14 give defendants notice of the particular misconduct . . . so that they
15 can defend the charge.'"  Id. (citing Vess v. Ciba-Geigy Corp., 317
16 F.3d 1097, 1108 (9th Cir. 2003)).

17        Defendants argue Plaintiffs "fail to allege what false facts
18 were stated, by whom, to whom, when, what authority that person had,
19 how that person intended each Plaintiff to rely on the statements, or
20 how they were false."  (Defs.' Mot. at 8.)  However, in their Second
21 Amended Complaint, Plaintiffs allege "California Regional senior
22 management, including Hank Barge, Bob Baker, the Controller, and Denis
23 Shunta, [the] Product Manager, held meetings throughout the state
24 informing agents and managers of the reasoning for the mileage band
25 [practices] and the company's position on the legality of the
26 program."  (Pls.' Second. Am. Compl. ¶ 25.)  Plaintiffs further allege
27 Defendants learned the mileage band practices were illegal and/or
28 improper, but withheld this information from Plaintiffs despite their

duty to do so.  (Id. ¶¶ 51, 56.)  Plaintiffs also assert Defendants knew that withholding this information "would lead to discipline" and "would result in damage to Plaintiffs' personal and professional integrity . . . ."  (Id. ¶ 53.)  Consequently, Plaintiffs have identified what false facts were allegedly stated, when and where the false statements were made, who made the false statements, what authority these people had, and how these people intended Plaintiffs to rely on the false statements to their detriment.  Since these allegations are specific enough to give Defendants notice of their alleged misconduct, their Rule 9(b) motion to dismiss for failure to allege fraud with particularity is denied.

## CONCLUSION

For the stated reasons, Defendants' Rule 12(b)(6) motion to dismiss for failure to state a claim is granted in part and denied in part, and their Rule 9(b) motion to dismiss for failure to plead with particularity is denied.

IT IS SO ORDERED.

Dated:  September 7, 2006

/s/ Garland E. Burrell, Jr.
GARLAND E. BURRELL, JR.
United States District Judge